# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DYLAN CAMPBELL | CIVIL ACTION |
| VERSUS | 23-2-SDD-RLB |
| HELMERICH & PAYNE, INC. ET AL | |

## RULING

This matter is before the Court on the Motions to Dismiss[1] filed by Defendants Larry Ruble and Larry Ruble Consulting, LLC (collectively, the "Ruble Defendants"). Plaintiff Dylan Campbell ("Plaintiff") filed a combined Opposition[2] to both motions. The Ruble Defendants filed a joint Reply.[3] For the reasons that follow, the Motions will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On or about November 14, 2022, Plaintiff initiated this personal injury action in the 19th Judicial District Court, East Baton Rouge Parish, State of Louisiana.[4] Plaintiff sued multiple parties in connection with injuries he allegedly sustained from a well explosion and fire which occurred during his employment.[5] Specifically, Plaintiff named the following defendants in the original Petition: Helmerich & Payne, Inc. ("H&P Inc."), Helmerich & Payne Management, LLC ("H&P Management"), GeoSouthern Energy Corporation ("GeoSouthern"), Huckaby Four JS, LLC ("Huckaby"), Jaqueline Huckaby Woodson

---

[1] Rec. Docs. 58, 66.
[2] Rec. Doc. 72.
[3] Rec. Doc. 74.
[4] Rec. Doc. 1-2.
[5] *Id.* at p. 4.

("Woodson"), and SWN Production (Louisiana), LLC ("SWN").[6] In the original Petition, Plaintiff alleged he was employed by H&P Inc. and H&P Management (collectively, the "H&P Defendants"); that GeoSouthern "operated, managed and maintained" the well; that SWN owned the well; and that Huckaby and Woodson (collectively, the "Huckaby Defendants") "owned the land on which the subject well was located."[7] The H&P Defendants were later dismissed pursuant to a joint motion filed under Federal Rule of Civil Procedure 41.[8]

On January 3, 2023, Defendants (with the exception of GeoSouthern) removed the action to this Court on the basis of diversity subject matter jurisdiction.[9] Although the Huckaby Defendants shared Louisiana citizenship with Plaintiff, the removing Defendants argued the Huckaby Defendants' citizenship should be ignored because they were improperly joined for the purpose of destroying complete diversity.[10] Plaintiff moved to remand, arguing the Huckaby Defendants were properly joined.[11] On August 31, 2023, the Court denied the Motion to Remand and dismissed Plaintiff's claims against the Huckaby Defendants without prejudice, finding no reasonable basis to predict Plaintiff could recover against these defendants.[12]

On February 28, 2024, Plaintiff filed a Motion for Leave to Amend Complaint[13] and a second Motion to Remand.[14] In the Motion for Leave to Amend, accompanied by

---

[6] *Id.* at pp. 1–2.
[7] *Id.* at p. 4.
[8] Rec. Doc. 24.
[9] Rec. Doc. 1.
[10] *Id.* at p. 5.
[11] Rec. Doc. 19.
[12] Rec. Docs. 28, 29.
[13] Rec. Doc. 40.
[14] Rec. Doc. 41.

Plaintiff's proposed First Amended Complaint,[15] Plaintiff sought to name several additional defendants, including: Larry Ruble Consulting, LLC; Larry Ruble (collectively, the "Ruble Defendants"); William A. Lipps, Inc.; and William A. Lipps (collectively, the "Lipps Defendants"). The Ruble Defendants were alleged to be Texas citizens, while the Lipps Defendants were alleged to be Louisiana citizens.[16] On the same day of the filing of the Motion for Leave to Amend, Plaintiff moved to remand on account of the anticipated presence of the non-diverse Lipps Defendants in the action.[17]

Defendant SWN filed an Opposition[18] to the Motion for Leave to Amend and the second Motion for Remand. SWN argued Plaintiff sought to add the Lipps Defendants for the sole purpose of destroying diversity and had no reasonable basis of recovery against the Lipps Defendants.[19] After considering the parties' arguments and the allegations in the proposed First Amended Complaint, Magistrate Judge Richard L. Bourgeois, Jr. denied Plaintiff's Motion for Leave to Amend with respect to the addition of the Lipps Defendants, finding *inter alia* that "the absence of factual and legal support for any such claim [against the Lipps Defendants] supports a conclusion that Plaintiff is seeking to add them as non-diverse defendants for the purpose of destroying complete diversity."[20] Because Plaintiff was denied amendment with respect to the non-diverse Lipps Defendants, the Motion to Remand was denied as moot.[21]

On June 13, 2024, Plaintiff filed an Amended Complaint naming the following defendants: SWN; GEP Haynesville, LLC ("GEP"); Iron Horse Tools, Inc. ("Iron Horse");

---

[15] Rec. Doc. 40-2.
[16] *Id.* at pp. 4–5.
[17] Rec. Doc. 41.
[18] Rec. Doc. 46.
[19] *Id.*
[20] Rec. Doc. 47, p. 15.
[21] *Id.* at p. 17.

and the Ruble Defendants.[22] Plaintiff alleges SWN hired the Ruble Defendants as "company men or well site supervisors of the subject well site" to speed up production.[23] Plaintiff lodges negligence and intentional tort claims against the Ruble Defendants in connection with the explosion and resulting injuries.[24]

The Ruble Defendants filed the instant Motions to Dismiss pursuant to Rule 12(b)(6), which are virtually identical.[25] The Ruble Defendants principally argue that Magistrate Judge Bourgeois' denial of Plaintiff's request to add the Lipps Defendants to the action should result in the dismissal of the claims against the Ruble Defendants because "[t]he allegations against the Lipps Defendants and the Ruble Defendants are essentially identical."[26] For this reason, the Ruble Defendants argue that the allegations against them have "already been found deficient."[27] In response, Plaintiff argues the facts alleged against the Ruble Defendants in the operative Amended Complaint are different from those previously alleged against the Lipps Defendants in the proposed First Amended Complaint and are sufficient to withstand a 12(b)(6) motion.[28] Plaintiff also argues there were "other considerations that weighed in favor of rejecting the Lipps [D]efendants" that are not applicable to the Ruble Defendants.[29]

---

[22] Rec. Doc. 48. Although Plaintiff entitled this document "Second Amended Complaint," the Court will refer to it as the "Amended Complaint" for purposes of clarity because it is the first and only amended complaint that has been actually filed as a pleading in this case.
[23] *Id.* at ¶ 18.
[24] *Id.* at ¶¶ 39–44.
[25] Rec. Docs. 58, 66.
[26] Rec. Docs. 59, 66-1, pp. 9–10.
[27] *Id.* at p. 7.
[28] Rec. Doc. 72, p. 2.
[29] *Id.*

## II.     LAW AND ANALYSIS

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[30] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[31] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[32]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[33] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[34] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[36] "Furthermore, while the court must accept well-

---

[30] *In re Katrina Canal Breaches Litigation*, 495 F. 3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F. 3d 464, 467 (5th Cir. 2004)).
[31] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F. 3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[32] *In re Katrina Canal Breaches Litigation*, 495 F. 3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[33] *Twombly*, 550 U.S. at 545 (internal citations and brackets omitted).
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[35] *Id*.
[36] *Id*.

pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[37] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[38]

In *Canter v. Koehring Co.*,[39] the Louisiana Supreme Court articulated the following four-part test to determine whether an employee may be individually liable to third persons:

> 1. The principal or employer owes a duty of care to the third person …, breach of which has caused the damage for which recovery is sought.
>
> 2. This duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
> 4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally

---

[37] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F. 3d 353, 361 (5th Cir. 2004)).
[38] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[39] 283 So. 2d 716 (La.1973).

should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.[40]

In the operative Amended Complaint, Plaintiff alleges the explosion occurred in the following manner:

> On the date of the incident, Plaintiff was draining the flare line between the gas buster and the flare stack because the flare had gone out. As Plaintiff opened the drain valve, located at the 90-degree elbow under the flare stack, the flare line discharged a mixture of water and volatile material which was then ignited by the flare igniter. Suddenly and without warning, a fiery explosion ensued, and Plaintiff was covered with burning material all over his body. As a result of the explosion and flames, Plaintiff suffered burns to his hands, back, head, face, and legs, and sustained injuries to other parts of his body as well.[41]

Plaintiff alleges SWN hired several contractors, including the Ruble Defendants and the (now non-party) Lipps Defendants, "to fast forward production."[42] According to Plaintiff, the Ruble Defendants and William Lipps "oversaw the well site at the time of the explosion," and they "either knew, or should have known, of the dangerous conditions with the equipment that caused the subject incident."[43] Plaintiff further alleges that one of the reasons the explosion occurred was because SWN and the Ruble Defendants did not rent a certain catch basin, "which was a critical piece of equipment reasonably known by all Defendants to be necessary in order to control the flare stack."[44]

Plaintiff also alleges that Larry Ruble was involved in instructing Plaintiff to open the drain valve which led to the explosion:

> The dangerous nature and manner of the work being performed made it substantially certain that instructing

---

[40] *Id.* at 721.
[41] Rec. Doc. 48, ¶ 12.
[42] *Id.* at ¶ 18.
[43] *Id.* at ¶ 19.
[44] *Id.* at ¶ 20.

> Plaintiff to open a valve on an extinguished flare stack would cause an explosion. Defendant Larry Ruble, who was responsible for supervising and inspecting the well site, knew of the substantial dangers involved with sending the Plaintiff near the extinguished flare stack to open a gas valve. Despite knowing that an incident of this sort was substantially certain to occur, Ruble proceeded with the instruction. The dangers to Plaintiff and others on the well site in opening the valve of the extinguished flare stack made the situation one where it was not a question of "if" an incident would occur, but a question of "when" it would occur.[45]

In their Motion, the Ruble Defendants make minimal effort to actually apply the *Canter* factors to Plaintiff's allegations. Instead, they rely heavily on the notion that Magistrate Judge Bourgeois' analysis in denying Plaintiffs' amendment of the Complaint with respect to the addition of the Lipps Defendants compels dismissal of the claims against the Ruble Defendants because of the congruency of the allegations against both sets of defendants.[46]

In finding the allegations against the Lipps Defendants in the proposed First Amended Complaint insufficient to establish liability under *Canter*, Magistrate Judge Bourgeois reasoned as follows:

> Plaintiff fails to allege that any underlying personal duties were delegated to the Lipps Defendants (as opposed to general administrative duties with respect to the work site). At most, Plaintiff alleges that the Lipps Defendants "knew or should have known" about the underlying conditions that resulted in the explosion. (*See* R. Doc. 40-2 at 10-11).[47]

Magistrate Judge Bourgeois continued:

> Even if the *Canter* factors do not apply (on the basis that the Lipps Defendants were contractors and not employees), Plaintiff does not allege that Mr. Lipps was personally involved in the underlying incident. At most, Plaintiff generally alleges

---

[45] *Id.* at ¶ 44.
[46] Rec. Docs. 59, 66-1, pp. 3–11.
[47] Rec. Doc. 47, p. 12.

> that the Lipps Defendants knew or should have known that an explosion would occur (and should have warned Plaintiff of the dangerous situation) in light of "rainy conditions" on the day of the incident, the "flare equipment" and "flare line" in operation, and the "relighting protocol after a flare goes out." (R. Doc. 40-2 at 11). But the record indicates that Mr. Ruble (and not Mr. Lipps) was the consultant present and on duty at the time of the incident.[48]

Taking the facts alleged in the operative Amended Complaint as true and viewing them in the light most favorable to Plaintiff, the Court finds that the Ruble Defendants' motion should be denied. Magistrate Judge Bourgeois' reasoning in disallowing Plaintiff's Motion to Amend with respect to the Lipps Defendants does not compel dismissal of the Ruble Defendants. Significant portions of the analysis behind the Magistrate Judge's decision do not support dismissal of the claims against the Ruble Defendants. First, the Magistrate Judge found the fact that Plaintiff contemporaneously filed the Motion for Leave to Amend with the Motion to Remand suggested Plaintiff's purpose in seeking to add the non-diverse Lipps Defendants was to destroy diversity.[49] Second, William Lipps submitted an affidavit in which he declared he had no personal involvement in the incident. The affidavit reads as follows, in pertinent part:

> 5. In connection with the execution of this Declaration, I reviewed the attached First Report of Injury or Illness, which documents an incident on November 13, 2021, at 10:05 a.m. at the Site involving Dylan Campbell. Apart from my review of the First Report of Injury or Illness for purposes of this Declaration, I have no personal knowledge of any incident involving Dylan Campbell, on November 13, 2021, or otherwise. I do not have personal knowledge of the tasks Dylan Campbell performed at the time of his alleged incident or injury either. I was not on duty when the alleged incident occurred and did not otherwise participate in the work in progress at the time of the incident.

---

[48] *Id.* at p. 13.
[49] *Id.* at p. 9.

> 6. More specifically, when I performed work in connection with the Site, the only hours I ever worked were from 6:00 p.m. to 6:00 a.m. Thus, I was not on duty during the daytime hours when the alleged incident involving Mr. Campbell occurred on November 13, 2021. Moreover, I did not supervise Mr. Campbell; provide instruction to Mr. Campbell; inspect his work; or otherwise oversee any of the operations ongoing at the time of the alleged incident. In fact, I was asleep when the incident occurred because my work shift ended hours earlier.
>
> 7. My daytime counterpart on November 13, 2021, was Larry Ruble. Mr. Ruble's work hours were from 6:00 a.m. to 6:00 p.m.
>
> 8. On November 13, 2021, and prior thereto, I did not have knowledge of any complaints regarding or defects with respect to the flare line or flare equipment at the Site.[50]

As stated in Lipps' affidavit, the Magistrate Judge repeatedly noted that "the record indicates that Mr. Ruble (and not Mr. Lipps) was the consultant present and on duty at the time of the incident."[51] Lipps' absence at the time of the incident was a significant factor in the Court's decision to reject the addition of the Lipps Defendants into this lawsuit. Conversely, the Ruble Defendants do not dispute that Larry Ruble was present and on duty at the time of Plaintiff's injury. This distinction makes Plaintiff's allegations against the Ruble Defendants stronger than those proposed against the Lipps Defendants, and it remains plausible at this stage that the Ruble Defendants bear responsibility.

The Ruble Defendants further argue that the Incident Field Report[52] attached to the Amended Complaint controverts Plaintiff's allegation that Larry Ruble instructed

---

[50] Rec. Doc. 46-2.
[51] Rec. Doc. 47, p. 13. *See also* Rec. Doc. 40-2, pp. 446–448 (The Incident Field Report, indicating that Ruble was the "GEP rig consultant" on duty at the time of the incident).
[52] Rec. Doc. 48-6. The Court may consider this document because it is both attached to and referenced in the Amended Complaint. *See Sebelius*, 635 F. 3d at 763.

Plaintiff to open a gas valve leading up to the incident.[53] The Ruble Defendants quote the following portion of the Incident Field Report:

> At or around 10am on Saturday 13 November, H&P Employee Dillon Michael Campbell (Mr. Campbell) was instructed by Chris Busby (H&P Driller) to drain the flare line between the gas buster and the flare stack.[54]

Referencing this document, the Ruble Defendants argue: "The report does not indicate that Ruble was involved in the incident at all, much less supervising or directing Plaintiff's work activities or operations. Ruble's only involvement, per the post-incident report, was after the events leading up to the incident and after Plaintiff's injury had already occurred."[55]

The Court rejects the Ruble Defendants' attempt to disprove Plaintiff's allegations with the Field Incident Report. First, the indication in the report that Chris Busby instructed Plaintiff to drain the flare line does not establish that the Ruble Defendants had no role in the incident, and it does not necessarily contradict Plaintiff's allegations. Moreover, the Court accepts Plaintiff's allegations as true in the context of a Rule 12(b)(6) motion.[56] In the words of the Fifth Circuit, "a 12(b)(6) inquiry focuses on the allegations in the pleadings, not whether a plaintiff actually has sufficient evidence to succeed on the merits."[57] The Ruble Defendants' use of the Field Incident Report as evidence of their lack

---

[53] Rec. Docs. 59, 66-1, p. 10.
[54] Rec. Doc. 48-6, p. 2.
[55] Rec. Docs. 59, 66-1, pp. 10–11.
[56] *In re Katrina Canal Breaches Litigation*, 495 F. 3d at 205 (quoting *Martin K. Eby Constr. Co.*, 369 F. 3d at 467).
[57] *Ferrer v. Chevron Corp.*, 484 F. 3d 776, 782 (5th Cir. 2007) (citing *Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't,* 479 F. 3d 377, 379 (5th Cir.2007)).

of involvement would be more appropriate in the context of a motion for summary judgment than this Motion to Dismiss.[58]

Finally, the Ruble Defendants argue they cannot be liable based on jurisprudence discussing the duties owed by one independent contractor to another independent contractor.[59] The Fifth Circuit has stated:

> Independent contractors do not generally owe a duty to protect the employee of another independent contractor *beyond the exercise of ordinary care that is owed to the public generally*. … One independent contractor owes another independent contractor at least "the duty to refrain from gross, willful or wanton negligence, and at the most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition."[60]

Further, "in determining whether one independent contractor owes a duty to another independent contractor's employee, relevant considerations are whether one independent contractor employs, shares a contract with, or supervises the other's employee."[61] Courts within this circuit have found that "one independent contractor owed no duty to another independent contractor's employee where it does not employ, share a contract, or actually supervise the plaintiff."[62]

---

[58] The Court's task on a Rule 12(b)(6) motion is to "assess the legal feasibility of [the] complaint, not to weigh evidence which plaintiff offers or intends to offer." *Jenkins v. City of Westwego*, No. CIV.A. 09-3033, 2009 WL 3062478, at *2 (E.D. La. Sept. 21, 2009) (quoting *Citibank, N.A. v. K–H Corp.,* 745 F. Supp. 899 (S.D.N.Y.1990)).
[59] Rec. Docs. 59, 66-1, pp. 13–14.
[60] *McCarroll v. Wood Grp. Mgmt. Servs., Inc.*, 561 F. App'x 407, 410 (5th Cir. 2014) (quoting *Lafont v. Chevron, U.S.A.,* 593 So. 2d 416, 420 (La. App. 1 Cir.1991) (emphasis added). *See also* 65 C.J.S. *Negligence,* § 63(113) (1966) ("As between two independent contractors who work on the same premises, either at the same time or one following the other, each owes to the employees of the other the same duty of exercising ordinary care as they owe to the public generally").
[61] *Fornah v. Schlumberger Tech. Corp.*, 737 F. App'x 677, 681 (5th Cir. 2018) (citing *McCarroll*, 561 F. App'x at 410).
[62] *McCarroll*, 561 F. App'x at 410 (citing *Parker v. Petroleum Helicopters, Inc.,* 2002 WL 461655 at *1 (E.D. La. March 20, 2002)). *See also Verdin v. Kerr McGee Corp.*, No. CIV. A. 95-1483, 1997 WL 39308, at *3 (E.D. La. Jan. 30, 1997); *Skinner v. Schlumberger Tech. Corp.*, No. CIV.A. 13-03146, 2015 WL 4253986, at *7 (W.D. La. July 13, 2015).

Here, the Court finds that Plaintiff adequately alleges the Ruble Defendants actually supervised his work, and also that they were personally involved in the events leading up to the incident.[63] Most notably, Plaintiff alleges that the Ruble Defendants were involved in instructing Plaintiff to do the task he was undertaking at the time of his injury.[64] Accordingly, the Ruble Defendants have failed to show that Plaintiff's allegations taken as true do not give rise to a plausible claim for relief.

### III. CONCLUSION

For the foregoing reasons, the Motions to Dismiss[65] filed by Defendants Larry Ruble and Larry Ruble Consulting, LLC are DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 28th day of January, 2025.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[63] *See* Rec. Doc. 48, ¶¶ 18–25, 39–44.
[64] *See* Rec. Doc. 48, ¶¶ 39–44.
[65] Rec. Docs. 58, 66.