UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DYLAN CAMPBELL**　　　　　　　　　　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　　　**NO. 23-2-SDD-RLB**

**HELMERICH & PAYNE, INC., ET AL.**

### ORDER

　　Before the Court is Defendant SWN Production (Louisiana), LLC's ("SWN") Motion to Quash Depositions of GEP Haynesville, LLC ("GEP"), SWN and Chad Mouser. (R. Doc. 116). Dylan Campbell ("Plaintiff") opposes the motion. (R. Doc. 131).

　　Also before the Court is Defendant Iron Horse Tools, Inc.'s ("Iron Horse") Motion to File Crossclaim against GEP and SWN. (R. Doc. 119). GEP and SWN oppose the motion. (R. Doc. 130).

　　Also before the Court is Plaintiff's Partially Opposed Motion to Amend Scheduling Order. (R. Doc. 127). Larry Ruble and Larry Ruble Consulting, LLC (collectively, the "Ruble Defendants") and SWN oppose the motion. (R. Doc. 139).

　　Also before the Court is SWN's Motion for Rule 35 Examinations of Plaintiff. (R. Doc. 128). Plaintiff filed a response. (R. Doc. 140).

　　Given the procedural posture and deadlines in this action, the Court considers the foregoing motions together.

**I.　　Background**

　　On or about November 14, 2022, Plaintiff initiated this personal injury action in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, naming as defendants Helmerich & Payne, Inc. ("H&P Inc."), Helmerich & Payne Management, LLC ("H&P Management"),

GeoSouthern Energy Corporation ("GeoSouthern"), Huckaby Four JS, LLC ("Huckaby"), Jaqueline Huckaby Woodson ("Woodson"), and SWN. (R. Doc. 1-2 at 1-8, "Petition"). Plaintiff, who worked as a derrickman on a drilling rig for H&P Inc. and H&P Management (collectively, the "H&P Defendants"), alleges that on or about November 13, 2021, he suffered injuries resulting from a "well explosion and fire in Red River Parish, Louisiana." (Petition ¶ 14). Plaintiff claims that the "subject well is operated, managed and maintained by Defendant GeoSouthern," which is also "responsible for . . . implementing and overseeing safe practices, policies and procedures at the subject location." (Petition ¶ 15). Plaintiff alleges that SWN owned the subject well and Huckaby and Woodson (collectively, the "Huckaby Defendants") "owned the land on which the subject well was located." (Petition ¶ 16).

All claims against the H&P Defendants and the Huckaby Defendants were subsequently dismissed without prejudice, leaving SWN and GeoSouthern as the sole remaining defendants. (R. Doc. 24; R. Doc. 29; *see* R. Doc. 28).

The Court's first Scheduling Order set, among other things, the deadline for completing non-expert discovery on November 1, 2024, and trial to commence by December 15, 2025. (R. Doc. 34).

On May 30, 2024, the Court granted Plaintiff leave to amend the Complaint to name GEP, the Ruble Defendants, and Iron Horse as additional defendants, further requiring Plaintiff to show cause why GeoSouthern should not be dismissed from this action for failure to serve and/or failure to prosecute. (R. Doc. 47). Plaintiff filed a response stating that he did not oppose the dismissal of GeoSouthern without prejudice. (R. Doc. 49). Plaintiff's Amended Complaint only names SWN, GEP, Iron Horse, and the Ruble Defendants as defendants. (R. Doc. 48).

On December 3, 2024, the Court issued the current Scheduling Order, setting, among other things, the deadline to "join other parties" on January 20, 2025, the deadline to complete non-expert discovery on April 1, 2025, the deadline to complete expert discovery on August 5, 2025, the deadline to file dispositive motions on June 30, 2025, and for trial to commence on December 15, 2025. (R. Doc. 83).

The district judge then denied GEP's Motion to Dismiss for Lack of Proper Service (R. Doc. 90) and the Ruble Defendants' Motions to Dismiss (R. Doc. 95). But GEP has filed a second Motion to Dismiss (R. Doc. 114), which remains pending before the district judge.

Despite being served on June 20, 2024 (R. Doc. 64), Iron Horse did not file an Answer until December 10, 2024 (R. Doc. 84). Iron Horse then obtained substitute counsel. (R. Doc. 89). Iron Horse filed a Third-Party Demand against H&P Inc. (R. Doc. 113), but then filed an Amended Third-Party Demand against Helmerich & Payne International Drilling Co. ("H&P International"). (R. Doc. 111). Despite being served (R. Doc. 113), H&P International has not filed an answer or otherwise made an appearance.

As discussed below, all of the motions at issue were filed **after** the close of non-expert discovery on April 1, 2025.

## II. Law and Analysis

### A. Legal Standards

Rule 16(b)(4) of the Federal Rules of Civil Procedure allows for the modification of a scheduling order deadline upon a showing of good cause and with the judge's consent. The Fifth Circuit has explained that a party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enters., LLC v. Southtrust*

3

*Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). In determining whether the movant has established "good cause" for an extension of deadlines, the Court considers four factors: (1) the party's explanation for the requested extension; (2) the importance of the requested extension; (3) the potential prejudice in granting the extension; and (4) the availability of a continuance to cure such prejudice. *See Leza v. City of Laredo*, 496 Fed. App'x 375, 377 (5th Cir. 2012) (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order, including a stay of discovery, after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc,* 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garret,* 571 F.2d 302, 3026 (5th Cir. 1990) (citation omitted).

"Trial courts possess broad discretion to supervise discovery." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted).

### B.    SWN's Motion to Quash (R. Doc. 116)

On April 21, 2025, SWN filed its Motion to Quash the Depositions of GEP, SWN and Chad Mouser. (R. Doc. 116). Plaintiff noticed the depositions of GEP and SWN to proceed on April 22, 2025, and the deposition of Chad Mouser to proceed on May 1, 2025. (*See* R. Doc. 116-3). SWN represents that on April 3, 2025, counsel for the parties had discussed requesting modification of the discovery deadline to accommodate depositions, with Plaintiff's counsel ultimately advising defense counsel that a draft motion would be circulated during the week of

April 14, 2025. (R. Doc. 116-1 at 2). No motion was circulated or filed. Accordingly, SWN objects to the noticed depositions proceeding "without clear deadlines and a Court-ordered structure in place for the remaining of the litigation process." (R. Doc. 116-1 at 3).

The Court will grant this motion given that it seeks to quash non-expert depositions noticed after the deadline to complete non-expert discovery. *See* LR 26(d)(2) ("Discovery depositions must be completed before the discovery deadline. Notices served before the discovery deadline which purport to schedule depositions after the discovery deadline will not be enforced.").

That said, SWN could have alerted the Court of the issues with respect to these deposition notices earlier. Plaintiff served the deposition notices for GEP and SWN on February 14, 2025, and the deposition notice for Chad Mouser on April 3, 2025. (*See* R Doc. 116-3). Generally, discovery motions must be filed within seven days of the discovery deadline. *See* LR 26(d)(1) ("Absent exceptional circumstances, no motions relating to discovery, including motions under Fed. R. Civ. P. 26(c), 29, and 37, shall be filed after the expiration of the discovery deadline, unless they are filed within seven days after the discovery deadline and pertain to conduct occurring during the final seven days of discovery").

While the Court will quash the dispositions as noticed, the Court also finds good cause (as discussed further below) to extend the deadline to complete non-expert discovery. Accordingly, Plaintiff will have the opportunity to notice and/or serve subpoenas for these quashed depositions. Furthermore, GEP remains subject to a deposition unless and until it is dismissed from this action.

C.     **Iron Horse's Motion to File Crossclaim (R. Doc. 119)**

On April 25, 2025, Iron Horse filed its Motion for File Crossclaim against GEP and SWN. (R. Doc. 119). Through the proposed crossclaim, Iron Horse seeks to "allege claims for contractual defense, indemnity, and insurance coverage pursuant to a Master Services Agreement between GEP and/or SWN and Iron Horse." (R. Doc. 119 at 2). In seeking this relief, Iron Horse notes that it was not named as a defendant until June 13, 2025, its former counsel filed responsive pleadings on December 10, 2024, and its current counsel enrolled on December 18, 2024. (R. Doc. 119-1 at 3). Furthermore, Iron Horse asserts that it is not in violation of the January 20, 2025 deadline to amend the pleadings and name new parties (because it is only seeking to bring crossclaim against existing parties) and that the crossclaim will not otherwise result in "delay or interfere with the timely disposition o the principal matter and will serve the interest of judicial economy." (R. Doc 119-1 at 3).

In opposing the relief, GEP and SWN assert that Iron Horse has failed to establish good cause to assert the crossclaim, which would prejudice these defendants. (R. Doc. 130). GEP and SWN assert that Iron Horse has not established good cause to allow the filing of a crossclaim after the close of discovery, arguing that Iron Horse was not diligent in seeking to assert the instant crossclaim prior to the close of non-expert discovery. (R. Doc. 130 at 1-3). As an initial matter, the Court's current Scheduling Order, which set a deadline to "join other parties" by January 20, 2025, was based upon Iron Horse's own submission for a modification of the Scheduling Order. (*See* R. Doc. 82; 83). This deadline governs the filing of any amended pleadings, including a pleading to assert a crossclaim.

A crossclaim (like a counterclaim) is a claim, not a pleading allowed under Rule 7(a) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(a) ("Only these pleadings are

allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."). Federal Rule of Civil Procedure 13(g) provides that "A **pleading** may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim related to any property that is the subject matter of the original action.") (emphasis added); *see also In re Pearl Res. LLC*, 643 B.R. 436, 449 (Bankr. S.D. Tex. 2022) ("[A] counterclaim is not itself a pleading, but is a claim included in some other pleading.").

The record indicates that Iron Horse was served on June 20, 2024 (R. Doc. 64), but did not file an answer in this action until December 10, 2024 (R. Doc. 84), and only after Plaintiff sought and obtained an entry of default (R. Doc. 79). Iron Horse obtained new counsel on December 18, 2024. (R. Doc. 89). Since it was named a defendant in this action, Iron Horse was aware of the Master Services Agreement entered between GEP and Iron Hose on November 29, 2026. (*See* R. Doc. 119-3). Indeed, Iron Horse asserted its rights under the Master Services Agreement in a communication to GEP on January 20, 2025. (R. Doc. 119-5). Iron Horse provides no explanation for waiting another four months until after the close of non-expert discovery on April 1, 2025 to seek leave to assert the instant crossclaim. Any request to do so is deemed untimely and subject to denial for that reason.

Iron Horse, however, has again sought to substitute counsel (R. Doc. 144) and is now seeking dismissal, without prejudice, of its third-party demand against H&P International and its crossclaim against GEP and SWN. (R. Doc. 143). Given that filing, the Court will deny the instant motion as moot.

### D. SWN's Motion for Rule 35 Examinations (R. Doc. 128)

On May 2, 2025, SWN filed a motion seeking Rule 35 examinations of Plaintiff by Dr. David Ferachi (orthopedics); Dr. Jeremy Comeaux (physical medicine and rehabilitation); Dr. Joseph Kass (neurology, behavioral neurology and neuropsychiatry); and a Zoom interview with Ronald Ducote (vocational rehabilitation and life care planning) on dates to be selected by Plaintiff, and with reports on the examinations to be due within 21 days following the examinations. (R. Doc. 128). SWN is willing to pay for any reasonable travel costs associated with the examinations. (R. Doc. 128 at 1). SWN asserts it is entitled to the examinations given that Plaintiff "has placed his physical and mental condition in controversy and identified experts who will testify that [Plaintiff] suffered a host of issues from burns to the face, hands, legs and back, lumbar spine injuries, right lower extremity pain, left hand injuries, anxiety disorder, PTSD, differences with socialization post-accident, concussion and cognitive repair." (R. Doc. 128 at 2). SWN also represents that it seeks these examinations given the future damages sought by Plaintiff pursuant to his life care plan and economist report. (R. Doc. 128 at 2; *see* R. Doc. 138).

In responding to the motion, Plaintiff seeks, among other things, an order requiring SWN to provide additional information regarding the sought examinations in compliance with Rule 35(a)(2)(B) of the Federal Rules of Civil Procedure and Local Rule 35. (R. Doc. 140). While Plaintiff agrees to submit to a rehabilitation assessment by Mr. Ducote, he seeks additional information regarding the remaining proposed examinations, asserting that (1) he should only be ordered to submit to a single physical examination by either Dr. Ferachi or Dr. Comeuax and (2) any neurological testing must consider prior testing already undergone by Plaintiff. (R. Doc. 140

8

at 3-8). Finally, Plaintiff asserts he is available on June 2-6, 9-11, and 23-26 and can attend examinations in Baton Rouge. (R. Doc. 140 at 8).

Rule 35 provides that the "court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order may be issued "only on motion for good cause and on notice to all parties and the person to be examined" and "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2).

A plaintiff places his or her physical or mental condition "in controversy" by pleading he or she has sustained a physical injury through the negligence of the defendant. *See Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). "The decision as to whether or not to order an independent medical examination under Rule 35(a) rests in the court's sound discretion." *Glaze v Bud's Boat Rental, Inc.*, No. 93-1334, 1993 WL 441890, *1 (E.D. La. Oct. 21, 1993). Furthermore, "[a]lthough Rule 35 examinations may be ordered 'only on motion for good cause shown,' and use of the rule to compel such examinations is not unfettered, Rule 35(a) generally has been construed liberally in favor of granting discovery." *Grossie v. Fla. Marine Transporters, Inc.*, No. 04-0699, 2006 WL 2547047, at *2 (W.D. La. Aug. 31, 2006).

"Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Schlagenhauf v. Holder,* 379 U.S. 104, 118 (1964). Rule 35 does not limit the number of examinations so long as "good cause" is shown for each exam. *Sadler v. Acker*, 263 F.R.D. 333, 336 (M.D. La. 2009). "Examples of circumstances which have been held sufficient to justify second examinations include: (a) separate injuries calling for examination by distinct medical specialties; (b) where a

9

physician requires assistance of other consultants before he can render a diagnosis; (c) where the first examination was not adequate or complete; and (d) where a substantial time lag occurred between the initial examination and the trial." *Moore v. Calavar Corp.*, 142 F.R.D. 134, 135 (W.D. La. 1992) (citing cases).

Local Rule 35 requires a party moving for a physical and/or mental examination of another party to include, in addition to the requirements of Federal Rule 35(a)(2), the following information in support of the motion: "[1] Whether a personal and/or medical history will be obtained; [2] Whether a physical examination will be undertaken; [3] A description of the written, verbal-administered and/or physical tests to be performed, both invasive and non-invasive; [4] The identities of any persons administering and/or interpretating the test results, if different from the person identified in the motion; and [5] The anticipated duration of the examination." LR 35.

It is unclear why SWN did not seek to conduct these Rule 35 examinations earlier in this action, and at least prior to the April 1, 2025 deadline to complete non-expert discovery. Given the timing of the instant motion (which is at least partially based on the receipt of Plaintiff's own expert reports), it appears that the proposed examinations will be conducted by its disclosed experts. *See Boatner v. ABC Ins. Co.*, No. 11-409, 2012 WL 3155529, at *1 (M.D. La. Aug. 2, 2012) (concluding that Rule 35 examination was "expert" discovery when conducted by disclosed experts to form their expert opinions). But even if the sought exams are properly characterized as expert discovery, SWN is, in effect, seeking an extension of its own deadlines to provide expert reports (which expired on May 17, 2025) until after these examinations are completed.

The Court finds good cause to modify the discovery deadlines to provide additional time to complete the physical and mental examinations sought. The Court has considered the timing of SWN's request for Rule 35 Orders with respect to these examinations in concluding that Plaintiff's own request for an extension of the deadlines should be granted. It should have been clear to SWN that obtaining an order allowing these four examinations, which are partially opposed by Plaintiff, would necessitate a continuance of certain deadlines. Indeed, SWN filed this motion just 15 days before its expert report deadlines, but seeks an additional 21 days to provide reports <u>after</u> the examinations are ordered and completed.

The Court also agrees with Plaintiff that the instant motion does not provide a proposed order that fully complies with Federal Rule 35(a)(2) and Local Rule 35. Given the need to expedite the sought examinations to prevent further delays in this action, the Court will require counsel for the parties to meet and confer with respect to the proposed examinations by Dr. Ferachi, Dr. Comeaux, and Dr. Kass. SWN may refile its motion with respect to these proposed examinations, with all information required by Federal Rule 35(a)(2) and Local Rule 35. Any such motion shall specify any remaining points of disagreement between the parties. Plaintiff shall be prepared to file any response on an expedited basis. *See* LR 7(f).

The Court has insufficient information, at this time, to distinguish between the physical examinations proposed by Dr. Ferachi and Dr. Comeaux. If a dispute remains regarding SWN's justification for seeking two separate physical examinations, SWN must inform the Court of the circumstances that justify good cause to allow the two examinations. Based on the information now before the Court, it appears that the distinct medical fields in which Dr. Ferachi and Dr. Comeaux practice are sufficient to justify separate examinations. That said, the parties will have

11

the opportunity to meet and confer on this issue and provide the Court further briefing on this point if necessary.

Moreover, the Court has insufficient information regarding the neurological testing to be conducted by Dr. Kass. It appears that Plaintiff is arguing that Dr. Kass should not be allowed to repeat neurological tests that have already been conducted on Plaintiff, either by a treating physician or Plaintiff's own expert. Plaintiff argues that any repeat testing could result in a "misdiagnosis of Plaintiff's condition or otherwise skewed data." (R. Doc. 140 at 6-8). The validity of duplicative neurological testing appears to be an issue that is best addressed through competing expert testimony. It does not appear to be a basis to preclude a repeat neurological test or evaluation pursuant to Rule 35. Plaintiff has certainly cited no decisional law to support such a finding.

### E.     Plaintiff's Partially Opposed Motion to Amend Scheduling Order (R. Doc. 127)

On May 1, 2025, the day before SWN filed its Motion for Rule 35 Examinations, Plaintiff filed his Partially Opposed Motion to Amend Scheduling Order. (R. Doc. 127). This motion was untimely filed one month after the close of non-expert discovery.

At the time Plaintiff filed the motion, he sought an approximately two-month extension of all deadlines through the filing of dispositive motions. These extensions were sought in light of the extensive motions practice conducted in this case and the need to complete discovery after all parties have made an appearance in this action.

SWN and the Ruble Defendants oppose this relief on the basis that Plaintiff is now seeking to reopen non-expert discovery entirely. (R. Doc. 139). These defendants argue that the only discovery that should be allowed are the two depositions noticed prior to the close of discovery on April 1, 2025. (R. Doc. 139 at 7). These defendants alternatively seek

corresponding extensions of expert discovery deadlines, particularly given the need to complete Rule 35 examinations. (R. Doc. 139 at 8).

The Court has discussed the need for an extension of the discovery deadlines above. Having considered the record, the Court finds good cause to reopen non-expert discovery for the sole purpose of conducting any outstanding depositions. The party seeking to conduct a deposition must secure the deposition, if necessary, through a proper Rule 30 deposition notice or Rule 45 subpoena. No additional written discovery is allowed unless agreed upon by the parties. *See* LR 26(d)(1). The Court will also provide corresponding extensions of expert discovery deadlines to accommodate the need to complete Rule 35 examinations and provide reports.

The Court will also set a new trial date to accommodate these extensions. The Court notes, however, that multiple extensions have already been provided in this action. The Court will not be inclined to find good cause to modify any further deadlines or to provide a new trial date. To the extent necessary and merited, the parties may conduct any additional discovery by agreement pursuant to Local Rule 26(d), but should not anticipate any further relief from the Court.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant SWN Production (Louisiana), LLC's Motion to Quash Depositions (R. Doc. 116) is **GRANTED**. The underlying depositions are quashed as noticed. Plaintiff may re-notice and/or subpoena the underlying depositions within the deadlines provided by this Order.

**IT IS FURTHER ORDERED** that Defendant Iron Horse Tools, Inc.'s Motion to File Crossclaim (R. Doc. 119) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant SWN Production (Louisiana), LLC's Motion for Rule 35 Examination of Plaintiff (R. Doc. 128) is **DENIED IN PART, without prejudice,** with respect to the proposed examinations by Dr. David Ferachi, Dr. Jeremy Comeaux, and Dr. Joseph Kass. SWN may file a renewed Motion for Rule 35 Examination of Plaintiff, **within 7 days** of the date of this Order, (1) after the parties meet-and-confer with respect to the issues raised in Plaintiff's opposition and (2) with an appropriate proposed order detailing all information required by Federal Rule 35 and Local Rule 35.

**IT IS FURTHER ORDERED** that Defendant SWN Production (Louisiana), LLC's Motion for Rule 35 Examination of Plaintiff (R. Doc. 128) is **GRANTED IN PART** with respect to the proposed examination by Ronald Ducote. Plaintiff will submit to a Zoom interview with Ronald Ducote (vocational rehabilitation and life care planning) within **30 days** of the date of this Order, on a day and time agreeable by the parties. The rehabilitation assessment shall not last more than **2 hours**. The topics to be discussed include general background information, information regarding medical treatments (past, present and future), education, work history, and vocational plans/goals.

**IT IS FURTHER ORDERED** that Plaintiff's Partially Opposed Motion to Amend Scheduling Order (R. Doc. 127) is **GRANTED**. Pursuant to Rule 16(b)(4), the Scheduling Order (R. Doc. 83) is amended as follows:[1]

1. The deadline to join other parties is **EXPIRED.**

2. Discovery must be completed as follows:

    a. Exchanging initial disclosures required by F.R.C.P. 26(a)(1): Completed.

---
[1] All deadlines are repeated for ease of reference. New deadlines are indicated in bold type.

      b.    **Filing** all discovery motions and **completing** all discovery except experts (**depositions only**): **July 1, 2025.**

      **NOTE:** Any motions filed regarding discovery must be accompanied by a certificate of counsel for the moving party, stating that counsel have conferred in person or by telephone for purposes of amicably resolving the issues and stating why they are unable to agree or stating that opposing counsel has refused to so confer after reasonable notice.

      c.    Disclosure of identities and resumés of experts:

          **Plaintiff(s):**    **June 1, 2025.**

          **Defendant(s):**    **July 1, 2025.**

          **Rebuttal:**    **July 15, 2025.**

      d.    Expert reports must be submitted to opposing parties as follows:

          **Plaintiff(s):**    **July 15, 2025.**

          **Defendant(s):**    **August 17, 2025.**

          **Rebuttal:**    **August 30, 2025.**

      e.    Discovery from experts must be completed by **October 30, 2025.**

3.    Deadline to file dispositive motions and Daubert motions: **September 30, 2025.**

4.    Deadline to file pre-trial order: **February 10, 2026.**[2]

      Prior to the filing of the pretrial order, the parties will exchange or make available for inspection all exhibits which the parties will or may introduce at trial.

5.    Deadline to file motions in limine: **March 2, 2026**.

      Any responses to Motions in Limine shall be filed within seven (7) days after the filing of the motion.

6.    Deadline to file an affidavit of settlement efforts: **February 9, 2026.**

7.    Pre-trial conference date: **February 24, 2026 at 2:30 p.m. in the chambers of the Honorable Shelly D. Dick.**

---

[2] Motions to extend or otherwise modify this date and the dates/deadlines that follow shall be directed to the district judge.

15

8. Deadline to submit joint jury instructions, voir dire, and verdict forms to the presiding judge: **March 2, 2026**.

   The information regarding the Honorable Shelly D. Dick's pretrial order may be found on the court's website at (http://www.lamd.uscourts.gov) under "Judges' Info."

9. **A 7-day jury trial is scheduled for 9:00 a.m. beginning on March 23, 2026 in Courtroom 3.**

Signed in Baton Rouge, Louisiana, on May 29, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**